UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCISCO BAUTISTA CARRERA SALAZAR,

Petitioner(s),

v.

BRUCE SCOTT, et al.,

Respondent(s).

CASE NO. C26-3895-KKE

ORDER GRANTING HABEAS PETITION

Petitioner filed a petition for a writ of habeas corpus, asserting that his detention by Immigration and Customs Enforcement ("ICE") without a hearing violated his due process rights. Dkt. No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 7, 10. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. No. 1 at 1. On January 10, 2025, Petitioner applied for admission into the United States at the Brownsville, Texas Port of Entry. Dkt. No. 8 ¶ 5. Petitioner was issued a Notice to Appear ("NTA"), charging removability under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) and placing him in removal proceedings. *Id.* ¶ 6; Dkt. No. 9-2. He was paroled into the United States on the same day. Dkt. No. 8 ¶ 7; Dkt. No. 1-2. Petitioner's parole expired on April 24, 2026. Dkt. No. 1-2 at 5. Petitioner alleges that he has applied for asylum and his case remains pending. Dkt. No. 1 at 1; Dkt. No. 1-2 at 7.

On October 8, 2026, Petitioner was arrested and taken into immigration custody during a targeted enforcement operation in Portland, Oregon. Dkt. No. 8. ¶ 9. Petitioner states that he was at the United States Citizenship and Immigration Services ("USCIS") office that day for a

fingerprinting appointment in conjunction with his asylum application. Dkt. No. 1 at 1. Though the Government concedes that Petitioner "was not the target of the operation," the Government contends that he purportedly "matched the description of the target" and was arrested by ICE officers without a warrant. Dkt. No. 8. ¶ 9.[1] Petitioner was transferred to the Northwest Immigration Processing Center ("NWIPC") later that day, where he remains detained. *Id.* ¶ 10. Petitioner was provided with a Form I-286. Dkt. No. 9-3. The Government contends that Petitioner has not made a bond request. Dkt. No. 7 at 3; Dkt. No. 8. ¶ 11.

Petitioner filed the habeas petition on October 13, 2026. Dkt. No. 1. The Government filed its return on October 27, 2026, and Petitioner filed his traverse on October 30, 2026. Dkt. Nos. 8, 10. This matter is now ripe for the Court's review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. ANALYSIS

### A. Petitioner's Re-detention Must Comport with Due Process, Regardless of the Detention Statute That Applies

The Government contends that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission who was initially encountered at the United

[1] According to the Government, "[a] warrantless arrest was conducted" because officers determined that Petitioner was "likely to escape before a warrant could be issued and if released from detention would likely abscond." Dkt. No. 9-1 at 3–4 (I-213 Form); *see also* Dkt. No. 8 ¶ 9. The Government's justification for the warrantless arrest strains credulity and is belied by the record, which establishes that Petitioner was arrested at the *USCIS office* where he had voluntarily appeared for a fingerprinting appointment related to his asylum application. Dkt. No. 1 at 1; Dkt. No. 9-1 at 3–4. There is no evidence in the record suggesting Petitioner was likely to abscond.

States border. Dkt. No. 7 at 3–5. Petitioner disagrees and argues that his release into the country on parole means he is not seeking admission at the border and subject to mandatory detention under Section 1225(b)(2). Dkt. No. 1 ¶¶ 31–34. The record is inconsistent on this issue: On the one hand, when the Government served Petitioner with an NTA on January 10, 2025, that document stated that Petitioner was an "arriving" noncitizen, and immigration officials issued Petitioner an I-94 card (Dkt. No. 1-2 at 5), "which is typically given to § 1182(d)(5)(A) parolees." *Cuervo Marin v. Ice Field Off. Dir.*, No. C26-1071-KKE, 2026 WL 1123516, at *3 (W.D. Wash. Apr. 24, 2026) (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)). On the other hand, the Government did not invoke Section 1225(b) as its detention authority when it detained Petitioner a month ago; it instead relied on Section 1226 and offered him the opportunity to request that an immigration judge review his custody determination. *See* Dkt. No. 9-3 at 2 (citing INA § 236, codified at 8 U.S.C. § 1226.).

However, "the Court need not consider whether there is a lawful statutory basis for Petitioner's current detention," *Wang v. Warden of Nw. Ice Processing Ctr.*, No. C26-2933-MLP, 2026 WL 2963559, at *2 (W.D. Wash. Oct. 1, 2026), because "[c]ourts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies," *Blanco v. Hermosillo*, Case No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026). Thus, "the fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (citation modified). Where Petitioner challenges his re-detention on due process grounds (Dkt. No. 1 ¶¶ 35–39), the Court need not resolve the disputed issue of which statutory frameworks governs Petitioner's re-detention, because the Due Process Clause "applies to

[Petitioner] … regardless of whether he is subject to detention under § 1225(b)(1), § 1225(b)(2), or § 1226(a)." *Singh v. Noem*, No. 2:26-CV-00651, 2026 WL 925627, at *2 (W.D. Wash. Apr. 6, 2026); *see also Wang*, 2026 WL 2963559, at *2; *Sarwari v. Wamsley*, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026).

Accordingly, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process**

Petitioner contends that his arrest and re-detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) (quoting *Zadvydas*, 533 U.S. at 690).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1. <u>Petitioner has a protected interest in his liberty</u>

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, where Petitioner was released on parole on January 10, 2025, and had been living freely in his community for over a year before he was detained, "the constitution does not countenance fictional erasure of his actual presence in this country—or his concomitant due process rights." *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026). A "parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and, as such, the parolee's liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Thus, "termination [of parole] calls for some orderly process[.]" *Id.* "This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Torres v. Hermosillo*, No. 25-CV-2687, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1136 ("When he was released … on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."). And even if his parole expired in April of 2026, "Petitioner's liberty interest does not expire along with his parole." *Martinez-Gutierrez v. Noem*, No. 26-cv-00421, 2026 WL 279890, at *3 (E.D. Cal Feb. 3, 2026) (cleaned up); *see also Dieng*, 2026 WL 411857, at *7 (same).

Moreover, the Government set Petitioner's master calendar hearing for October 27, 2026 (Dkt. No. 1-2 at 7)—i.e., approximately six months after the expiry of Petitioner's parole—a fact which further demonstrates that Petitioner reasonably relied on his continuing freedom. *See, e.g.*, *Pardo Maury v. Scott*, No. C26-3643-KKE, 2026 WL 3269251, at *3 (W.D. Wash. Oct. 30, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Thus, the first *Mathews* factor favors Petitioner.

2. <u>The risk of erroneous deprivation is high</u>

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation in the absence of a pre-detention hearing is high.

The Government argues that "the risk of a constitutionally significant deprivation of Petitioner's liberty without a pre-detention hearing is minimal" because "Petitioner's parole expired about six months before Petitioner was taken into immigration custody." Dkt. No. 7 at 7. The Court is not persuaded and agrees with the majority of courts in this District that "have rejected the Government's parole expiration argument and expressed skepticism that this automatic revocation without any notice to non-citizens comports with due process." *Azuaje-Gamez v. Warden, Nw. Ice Processing Ctr.*, No. 2:26-CV-02988-JHC, 2026 WL 2922004, at *4 (W.D. Wash. Sept. 29, 2026) (citation modified) (citing cases). The expiration of parole does not "somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." *L.M. v. Noem*, No. 25-cv-02194, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (citing *Ramirez Tesara*, 800 F. Supp. 3d at 1136). This is particularly true where the Government has set hearing dates in Petitioner's pending asylum case into the future far beyond

the initial expiration date of Petitioner's parole, such that the status of his parole is unclear.[2] Finally, where the Government relies on shifting detention authority, the risk for erroneous deprivation increases. The Court therefore finds the risk of an erroneous deprivation is high where ICE re-detained Petitioner without giving him an opportunity to be heard. Accordingly, the second *Mathews* factor also favors Petitioner.

3. The Government's interest in detaining Petitioner without process is low

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. As this Court has ruled repeatedly, the Government's interest in detaining non-citizens previously released without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Thus, the third and final *Mathews* factor favors Petitioner.

In sum, the Court's review of the *Mathews* factors confirms that Petitioner's re-detention does not comport with due process.

## IV. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy. "In habeas cases, federal courts have broad

[2] *See Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1181 (D. Nev. 2025) ("Pursuant to regulation, where, as here, parole is terminated automatically upon an expiration date, if the previously paroled noncitizen cannot be excluded, deported, or removed 'within a reasonable time,' the noncitizen 'shall again be released on parole unless in the opinion of the official ... the public interest requires that the alien be continued in custody.'" (citing 8 C.F.R. § 212.5(e)(1)–(2)(i))).

discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *9 (N.D. Cal. Dec. 18, 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025).

## V. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS as follows:

1) Petitioner shall be released from custody on reasonable conditions of supervision no later than November 14, 2026.

2) Petitioner shall not be re-detained, absent urgent circumstances, without notice and a hearing before a neutral decisionmaker. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

3) The Government shall file a declaration no later than November 16, 2026, documenting Petitioner's release in compliance with this order.

Dated this 13th day of November, 2026.

Kymberly K. Evanson
United States District Judge